EBENEZER LANE,
REUBEN WOOD,
PETER HITCHCOCK,
FREDERICK GRIMKE,
} JUDGES.

LESSEE OF SWAZEY'S HEIRS *v.* LEWIS V. BLACKMAN AND WIFE.

All last wills and testaments must be established by probate in the court of common pleas, and until a last will and testament is so established by probate, it can not be received as evidence of any title set up under it.

THIS case was adjourned from the county of Hamilton, upon a motion in behalf of the defendants for a new trial.

The lessors of the plaintiffs claim as heirs at law; the defendants as *devisees*. The question at issue arose upon the alleged will of Hazen Swazey. The paper was produced in court, at the trial of the ejectment, and parol evidence offered of its due execution.

It was part of the proof, that the alleged will had been twice offered for probate, in the court of common pleas of Hamilton county, and the probate refused. Open parol proof of the will was now objected to, in behalf of the heirs at law, and the objection sustained. There was of course, upon this decision, a verdict for the plaintiff. The defendants moved for a new trial, and the motion was adjourned here for decision.

STORER and SPENCER, in support of the motion :

The simple matter presented by the motion is, whether a will executed in Ohio, in 1830, devising lands here situated, not admitted *to probate, but, on the contrary, twice offered for that purpose and expressly *rejected*, can be proven *on the trial*, in an action of ejectment, by *parol* testimony, for the purpose of sustaining the devise.

By section 7 of the "act relating to wills," passed in 1824 (Chase's Stat. 1305), and in force at the time the present will was executed, it was provided, "that the executor of, or any other person interested in, any last will, etc., may cause it to be brought before the court of common pleas of the proper county, and cause the witness thereto to be examined, etc.; and if it shall appear that such will was duly executed, etc., the court shall cause the will, together with the proof, to be *recorded*. And every will which shall be proved in manner aforesaid, and shall have a certificate thereof indorsed upon it, with the seal of the said court thereunto annexed, and also a *transcript* of the record of such will, certified by the clerk under the seal of the court, shall be as effectual, in all cases, as the original will would be if produced and proven." And by section 17 of the same act, it is provided that "all *original wills* shall be recorded and filed in the clerk's office of the court in which they are respectively proven."

We contend, that by a fair construction of these provisions of the statute, taken in connection with all the previous laws on the same subject, the only legal evidence that can be received of the due execution of a will, whether of *real* or *personal* estate, on a trial in which any title is claimed under it, is a certificate of probate under the seal of the court of common pleas, or a transcript of the record of probate properly certified.

From the earliest organization of the territorial government to the present period, it has been the peculiar object of our system, that wills should be *proven* before the judges of the common pleas

sitting as a court of probate; and so important has the legislature deemed a probate before this tribunal, that by all the statutes on the subject, from the year 1808 to that of 1824, including three distinct enactments, have they expressly provided, "that before any written will or codicil can be considered *valid* in law, it shall be presented for probate, etc., and *proven*," etc.   See Chase's Stat. 572, 680, 930.   Previous to 1808, the language of all the statutes is "that all wills and codicils in writing, etc., being *proven* by two or more credible witnesses, to the satisfaction of the *court*, etc., shall be good and available for granting and conveying of the lands, goods, or chattels thereby given," etc.   Chase's Stat. 182, 492. These several statutes are *founded upon the ordinance of 1787. [?] On reference to which it will be found that the *probate of a will* is placed upon precisely the same footing as the *acknowledgement* or *proof of a deed;* both being necessary to the consummation of a conveyance of lands.  In the language of the ordinance, " estates in the said territory may be devised or bequeathed by wills in writing, signed and sealed by the devisor, and attested by three witnesses; and real estates may be conveyed by lease or release, or bargain and sale, signed, sealed, and delivered by the grantor, and attested by two witnesses; provided such wills be duly *proved,* and such conveyances be acknowledged, or the execution thereof duly proved, and be recorded within one year after proper magistrates, courts and registers shall be appointed for that purpose."   Chase's Stat 66.   These requisitions for the proof of wills and deeds have never been *substantially* departed from in all the subsequent legislation that has been had upon the subject to the present time.   And so far as any alterations have been made therein, they have invariably been to *limit* and *restrict,* rather than loosen and enlarge the forms and the manner of proof in regard to conveyances of real estate. To warrant the belief that a policy so long and steadily pursued, grown up and established by constant and *continued* acts of legislalation, has been *suddenly abandoned* for the loose and uncertain system of the English law, it must be manifested by evidence of the clearest and most *positive* intention.   No inference, however natural, which is drawn from the mere *silence* of the legislature, will be sufficient to establish it.   In the act before us there is not only no positive evidence of any intention to dispense with the necessity of *probate* in order to perfect a conveyance by will, to change the *forum* before which probate should be made, or to alter the mode

3

and manner of proof; but as far as *inference* can go, the plainest indication of a design to adhere to and *confirm* the long-established policy. Thus the act provides for the examination of witnesses before the judges of the court of common pleas; it provides for the recording and perpetuating of the testimony offered to establish the will; it requires the will to be *recorded* and the *original* filed away in the clerk's office of the court where probate is made; and lastly, it declares the effect of probate to be *conclusive* on all parties interested, unless set aside by bill in chancery, on a direct application for that purpose, made within two years thereafter. The care thus taken over the whole subject to preserve the *original will*, together with the testimony taken to establish it on the files *and records of the court, to declare the effect of probate, is utterly inconsistent with the idea that it was, notwithstanding the intention of the legislature, to commit the whole policy of probate to the *mere option* of a claimant; leaving him at liberty either to prove his devise before the court of probate, or to establish it before another tribunal, where his title under it was impeached. Why create a tribunal with so much care and solemnity, and require it to proceed with such form and deliberation for the very purpose of *probate,* if it were not intended to compel a resort to it?

But again, in the act before us, in that now in force, and in the previous legislation upon the subject, no distinction whatever is drawn between *realty* and *personalty*. Wills of both must be *executed* in the same manner; they must be *proven* and *recorded* in the same manner; and the same *evidence* which is required of the validity of the one is equally requisite of the other; the same provision which demands probate of the one exacts it of the other. Will it be contended for a moment, that the law, in terms or in spirit, in any one particular, creates a difference between them, or that there is any essential difference in the *nature* of the subject which requires the application of a different rule to each? Or will it be contended that a will of *personalty* would be good without probate? So far as any such difference may be thought to exist, it should seem to be in favor of extending the more liberal construction to wills of personal estate. Devises of *land,* unlike those of personalty, were unknown to common law. They are pure creatures of the statute, and should be especially held, in all matters connected with them, to a conformity and compliance with the law which called them into being. Why, then, seek to create a difference between them,

Lessee of Swazey's Heirs *v.* Blackman and Wife.

when the statute does not require it? Good policy forbids that the same will which conveys personal and real estate should be differently adjudged of by different tribunals. As, in the case before us, that it should be held *void* for the *personal* estate, and *valid* for the *real*—as though the real estate were of less importance, in contemplation of law, than the personal. The objection here taken to the establishment of separate jurisdictions for the settlement of the same question, is strongly enforced by the chancellor in the case cited by the defendants' counsel from Vanderheyden *v.* Reid, 1 Hopk. Ch. 414. "This result, he says, of an artificial division of jurisdictions can never be proper where it may be avoided. That a will should be adjudged *valid* because *the testator who made [9 it was of *sound mind*, and that the same will should be adjudged *void*·because the same testator was. *insane*, is a result·which should never take place under one system of laws." *A fortiori* should never take place under the *same law*, creating and applying the same regulations to each without exception or distinction.

The views above taken render it unnecessary to examine at length the positions and authorities presented by the defendants' counsel. However appropriate they might be to a system grown up entirely from the common law, they have no applicability to one which is the mere creature of statutory enactments. By the common law of England, in New York, and some of her sister states where the common law rule has been adopted, a marked distinction has always been drawn between wills of *real* and those of *personal* estate—not only in regard to *probate* and the effect thereof, but in regard to the *execution* also. In England, from the earliest period, wills of personalty were proven only in the ecclesiastical court before the ordinary, whose decisions allowing or disallowing them were in all cases conclusive. Troller on Ex. 76; Swinburn on Wills, 432, 436. And the only proof which could be, or is required at law of their due execution, is an exemplified *record of probate* under the seal of the ordinary. Ib. Devises of land, on the other hand, were not allowed at common law. They were first authorized by the statute 32 Hen. 8, c. 1. And as neither that nor any other subsequent statute provided any special jurisdiction for their proof, they were left to abide the rules of the common law, in the same manner as other conveyances of real estate, *i. e.*, they were subjected to proof, on the trial at law, in every case when the devise was contested. And hence, in

regard to these, no court of probate was established. Not so in Ohio—courts of probate always have existed for their proof under precisely the same regulations as were applied to personal estate. Indeed, in every act of legislation on the subject, both matters. have been included in the same section, without any notice whatever of a distinct classification. So far, then, as the English rule can be applied to this state, it favors the views we have above taken. For by that, whenever probate is required (as in the case of wills of personal estate), the record thereof furnishes the only legitimate evidence of their due execution.

The other position of the defendants' counsel, " that inasmuch as the validity of a will depends upon the proof of facts, which *ought to be submitted to a jury; and inasmuch as the court of common pleas sitting as a court of probate have no authority to impanel a jury to decide upon those facts, a claimant by devise would be deprived of the benefit of a trial by jury if probate of the will were refused," is much more specious than solid. In the first place it assumes that which is by no means conceded, that the court of common pleas sitting in probate have no power in a doubtful case to call in the aid of a jury to try the validity of a will. The constitution of Ohio, art. 3, sec. 5, declares that " the court of common pleas in each county shall have jurisdiction of all probate and testamentary matters." But it nowhere points out how that jurisdiction shall be exercised. The statute is equally silent upon the subject. Both, therefore, having conferred a jurisdiction over the subject matter, without having prescribed the mode of proceeding in the investigation of it, have left it to the court to adopt its own mode of proceeding, so far as the same is not forbidden by established law. No *direct* power is given to the court to take the depositions of absent witnesses, except by issuing a commission with the will annexed, to take the deposition of a subscribing witness. And yet we apprehend, it is incident to their jurisdiction that they may issue a like commission to take the deposition of an absent witness, to prove *insanity* in the testator, and that, too, if thought proper without annexing the will. For the power to take testimony, whether at home or abroad, is requisite to the due exercise of their jurisdiction. And there seems to be no good reason why they may not call in the aid of a jury to assist them in determining a doubtful question. In New York, where the court of probate is modeled after the

Lessee of Swazey's Heirs *v.* Blackman and Wife.

ecclesiastical court in England, it is held that an issue may be awarded to try the validity of a will; although the statute, creating that court, like ours, is entirely *silent* on the subject. And the reason assigned is, that the law being silent, has left it to the court to "adopt its own machinery," in the administration of its powers. 1 Hopk. Ch. 411–413. And there seems to be no law which forbids an English prerogative court from awarding an issue for the trial of facts. 1 Hopk. Ch. 412, and cases cited.

But if no such power were supposed to exist, the argument is still without peculiar force. 1. It would be just as applicable to wills of *personal* as to those of *real* estate; and in a country becoming highly commercial, the personal estate may be, and ofttimes is, far more important than the real. 2. It is by no *means uncommon to create special tribunals for the decision [11 of matters, sometimes of the greatest moment, without the intervention of a jury. Of these may be enumerated the exclusive jurisdiction of the judges of the Supreme Court in matters of *divorce* and *alimony*, where questions affecting the most important relations in life are determined; so also the jurisdiction conferred upon the commissioners of counties, and the appeal granted therefrom to the court of common pleas in the matter of roads and highways, where interests in land, to a large extent, are constantly involved. 3. It might well have been thought by the legislature, that as wills generally include both real and personal estate, it would be unjust, and perhaps almost uniformly defeat the intention of the testator, to establish one as to *real* estate, and hold it for naught as to *personal*. And hence, if on an *ex parte* application by the devisees, or those claiming under the will, there was not sufficient evidence to establish it as to *personalty* before the court of probate, it ought not to be taken before a different tribunal to establish it as to the *realty*.

The policy of our law requiring the proof of all wills, whether relating to real or personal estate, to be exhibited before the court of probate, is by no means peculiar to Ohio.

In Massachusetts, whose enactments are not more imperative than our own, it is held that "the *exclusive* jurisdiction of wills, whether of land or personal estate, belongs to the court of probate; and that the decree of that court can not be inquired into." 12 Mass. 525; 16 Ib. 433; 1 Pick. 549. In the case from Pickering the court say: " The experience of us all, on the bench and at the

7

bar, will justify the assertion, that no instance has occurred of a will being attempted to be proved otherwise than by the decree of the probate court; or, if appearing to be so proved, of any attempt to defeat it by evidence to the jury." Ib. 549.

In Maine, the same course of decision has been adopted. Small *v.* Small, 4 Greenl. 225 ; Moore *v.* Smith, 5 Ib. 494. In the first of these cases, it is said, page 225 : "The question, whether an instrument, purporting to be a last will and testament, ought to be allowed as such, is one of purely probate jurisdiction." In the second, page 494, it is said : "The probate of wills is within the exclusive jurisdiction of the courts of probate."

In Connecticut, the probate of a will before the court of probate is conclusive, whether of realty or personalty. Swift's Dig. 143: 1 Day, 170.

So also in Virginia. 1 Leigh, 293.

12] *In Ohio, it has been determined, by a uniform and constant course of practice, that the proper evidence of a devise is the certificate of probate; and it is believed that no instance has occurred, until the present, of an attempt to establish a devise by any other means.

But the question, we think, may be regarded as virtually, if not directly decided by this court, in the case of Wilson's Ex'rs *v.* Tappan, 6 Ohio, 174. There it was held that under a will made in another state, the legal title to land devised does not vest in the devisee until the will has been admitted to probate, and recorded in the proper county. And yet the statute (sec. 12 of 1824, sec. 14 of 1831) declares wills duly proven in any other state or territory, relative to property in this, "good and valid in law, in *like manner* as those made in this state are declared to be"—placing them both in the same situation, so far as the matter of probate and record is concerned.

STARR, for the plaintiff:

The decision of the common pleas in rejecting the will did not destroy it; because it may again be presented and established upon fuller evidence. 6 Ohio, 148.

The rejection, says the court in this case, extinguishes no right and binds nobody, for there are no parties before the court to be concluded.

It appears from a memorandum on the back of the will, in the handwriting of the clerk, that it was presented for probate in 1831,

and admitted to the probate and ordered to be recorded, but a new hearing being allowed, it was finally rejected.

The right of the defendants to set up their title by devise is the same, I conceive, as if there had been no decision of the common pleas in relation to it.

1. The validity of the will depends upon the proof of facts; and if the defendants can not set up their title by devise, they may lose it without the possibility of having those facts passed upon by a jury.

The law has made no provision for a jury to decide upon the validity of a will when presented to the court of common pleas for probate. It is only when a will has been admitted to probate and contested by bill in chancery, as pointed out in section 20 of the act relating to wills, that it can be submitted to a jury. When thus contested it is made the duty of the *court to award an [13 issue to be tried by a jury, whether the writing be the last will of the testator or not. It is then only that an appeal lies from the common pleas to the Supreme Court. 29 Ohio L. 246; 6 Ohio, 149.

2. The title of the devisee is complete when the will is executed according to the requisitions of the statute, and the testator is dead, subject only to the right of the executor to sell for the payment of debts. The statute requires that the will shall be in writing, signed by the testator, and attested and subscribed in his presence by two or more credible witnesses, who saw him subscribe it, or heard him acknowledge the same.

When thus executed, the estate vests in the devisee on the death of the testator before entry. Co. Lit. 111; 2 Kent Com. 533.

3. Section 7 of the act authorizes any person interested in a will to cause it to be presented to the common pleas for probate, and points out the mode of proving it. It authorizes the proof of such "circumstances as *would be proper to prove such* WILL *on a trial at law.*" When could it be proper to prove a will on a trial at law if not in just such a case as the present?

Section 8 provides that a certified copy of the will and probate under the seal of the court "shall be as effectual in all cases as the original will would be if *produced* and *proven.*"

The law of 1795, adopted for the government of the territory, made the probate of a will essential to the validity of a devise or bequest of personal property. 1 Chase's Stat. 182.

The same may be said of the act of 1805. 1 Chase's Stat. 142.

Sections 8 of the acts of February, 1808, of February, 1810, and January, 1816, provided "that no written will should be considered valid in law till presented to the court of common pleas for probate, and proven by two at least of the subscribing witnesses." 1 Chase's Stat. 572, 680; 2 Ib. 930.

In the acts of February, 1824, and February, 1831, this provision is omitted, making an entire change in the law on this subject.

4. In England, the probate of wills respects personal property only, and is a subject of ecclesiastical jurisdiction; but a devise or no devise of real estate is a question of common law jurisdiction, and triable in the common law courts, and in every case of a contested devise the execution of the will must be proven. With us, after the will has received probate in the common pleas, it is conclusive as to its validity, in regard both to real and personal 14] *estate, so long as it stands uncontested under section 20 of the act respecting wills; but the rights of the devisee of real estate, and legatee of personal property, are no more the same after probate than before. They are placed under different restrictions, and this results from the nature of the difference between real and personal estate. Until probate of the will the legatee has no right of which the law takes the least notice. It manifests his inchoate property; but even then he has no title, for the title to personal property bequeathed by will, even in the case of a specific legacy, both before and after probate, is in the executor. He may maintain trespass against the legatee for taking it away; or if the legatee be in possession of a specific chattel bequeathed to him, he can not retain it in opposition to the executor, though the assets be fully adequate to the payment of debts. The *assent* of the executor is requisite to perfect the right of the legatee, unless the legacy be chargeable upon real estate, and then he may recover it out of the real estate before probate. Toll, Law of Executors, 305; 2 Blk. Com. 502; Roberts on Wills, 77; 2 Atk. 361.

The probate of the will forms no part of the title of the devisee, nor is it essential to it. If the will be executed according to the requisitions of the statute, his title is perfect on the death of the testator. If he have no title till probate, lands devised would be

in a strange state of abeyance between the death of the testator and probate.

The constitution of the state, article 3, section 5, which declares that the court of common pleas in each county shall have jurisdiction of all probate and testamentary matters, has the effect to vest the jurisdiction of the ecclesiastical courts in England, so far as wills are concerned, in the courts of common pleas. But as *that* jurisdiction did not extend to devises of real estate, neither the constitution of the state nor the act organizing the judicial courts makes a question of devise or no devise *solely* triable in the courts of common pleas as courts of probate. Toll, Law of Executors, 68–75.

The fact that the court may admit a will to probate and thereby make the title of the devisee unquestionable till some one thinks proper to contest it according to the provisions of section 20, does not invalidate this position.

5. The law of New York in regard to the execution of wills is similar to the law of Ohio. Every will, whether of real or personal estate, or both, must be signed by the testator in the *presence of two attesting witnesses, who shall sign their [15, names at the end of the will, at the request of the testator, with their place of residence. 2 R. L. N. Y. 7.

In that state a will is admitted to probate by the surrogate of the county, who records the will and the proofs. His certificate of probate on the original will, or on an exemplification of the record signed by him and attested by his seal of office, is admitted in evidence. With regard to the personal property mentioned in the will, it is conclusive of its validity until reversed on appeal or revoked by the surrogate himself. As to the real estate, "it shall be received in evidence, and shall be as effectual in all cases as the orihinal will would be if produced and proved, and may, in like manner, be repelled by contrary proof." 2 R. L. N. Y. 3–5.

The only difference between the law of New York and of Ohio is, that the law of the latter state makes the probate by the common pleas conclusive for the time being as to both real and personal estate.

In the case of Bogardus et al. *v.* Clark et al., 1 Edward's Ch. 266, a bill was filed for the partition of certain real estate of which John Fisher died seized. It was resisted by the defend-

ants on the ground that John Fisher had made a will devising the
same real estate to them. The will had been presented to the
surrogate of the county and admitted to probate. There was an
appeal from his decision to the chancellor, who reversed it on the
ground of insanity in the testator.

The vice-chancellor decided that though the will depended upon
the same state of facts and circumstances, the mental capacity of
the testator, neither the decision of the surrogate establishing the
will, nor the decree of the chancellor reversing it, had any effect
whatever in establishing or invalidating the will as respected the
lands, and only effected the personal property. 4 Kent, 3d ed.
510, n.; 1 Paige Ch. 171; Hopk. Ch. 408; 3 Wend. 503; 2 Phil.
Ev. 190; 2 Atk. 370; 1 Russ. & Myl. 103; 6 Cowen, 178; Adams
on Eject. 261–270; 5 Cowen, 719; 1 Stark. Ev. 337; 3 Ib. 1682;
3 Adam's Ec. 79; 1 Huggard's Ec. 311.

If the defendants can not set up their title by devise because
there has been no probate of the will under which they claim, it
must be because they are prohibited by some statute of the state.
There is no statute which forbids it in terms. Is it because
16] *the statute provides for the probate of wills of both real and
personal estate in the courts of common pleas, and makes it con-
clusive for the time being? I can not see it. Their right to set
up their title is sustained by every principle of the common law,
not that the common law gave the right to devise, but when given
by the statute of wills it is sustained or defeated by the principles
of the common law. Probate in the ecclesiastical courts was not
necessary. It is conceded to be a principle of the common law
that "no testamentary paper of personalty can be admitted in
evidence until it has received probate in the ecclesiastical courts,
which have exclusive jurisdiction over wills of personal estate."
In the case of King *v.* Nethersal, 4 Term, 258, Lord Kenyon said:
"We can not receive any other evidence of there being a will in
this case than such as would be sufficient in all other cases where
titles are derived under a will; and nothing but the probate, or
letters of administration with the will annexed, are legal evidence
of the will in all questions respecting personalty." This is, no
doubt, a principle of our law, and probably of all the states in
this Union. Whoever would set up a claim to personal property
under a will must show a probate of that will in the proper

Lessee of Swazey's Heirs *v.* Blackman and Wife.

tribunal. 9 Cranch, 151; 3 Cond. Rep. 317; 12 Wheat. 169; 6 Pet. Cond. 500; 3 Mason, 508; 1 Wash. C. C. 204, 298.

But there is no principle of the common law which makes the probate of a will of both real and personal estate the only legal evidence of the devise. So far from it, it is no evidence at all. Our statute makes the probate of a will in the common pleas legal evidence in both cases so long as it stands, and this, I conceive, is the only difference in the two systems. The will in this case can not be rejected but on the ground that the statute in effect provides that there shall be no legal evidence of a devise of real estate except the probate of the will in the common pleas, thereby making the principle of the common law, which is applicable to wills of personal estate only, apply to devises of real estate.

6. A devise of real and a bequest of personal property are, from their nature, subject to different rules. It is clear that were it not for section 14 of the act regulating wills, a devise of lands in Ohio made in any other state according to the laws thereof, would not pass the lands unless made in accordance with the laws of Ohio. It is equally clear that were that section of the act expunged from the statute book, a will of personal *property [17 in Ohio made in another state or in a foreign country according to the laws thereof, by one having his domicile there, though not according to the laws of Ohio, would be a good bequest of such personal property. It is also well settled that if the owner of personal property in this state, but having his residence in a foreign country, should make a will of such personal property according to the laws of Ohio, but *not* according to the laws of such foreign country, it would not be a valid bequest of the property here. 1 Bin. 336; Story's Con. of Laws, 393, 394; 4 McCord, (S. C.) 418.

These distinctions proceed upon the well-known principle that movable property is governed by the law of the domicile of the owner; and real estate by the law of the place where it is situated. Story's Con. of Laws, 358; 2 Ohio, 124.

It may well be questioned whether section 14 of the act gives to the foreign testator the capacity to make a will of lands in Ohio unless he be twenty-one years of age, though he have the capacity to devise lands at an earlier age by the laws of the state where he resides. There is nothing in the case of Wilson's Ex'rs *v.* Tappan, 6 Ohio, 174, decisive of this question.

13

But with regard to personal property in Ohio, the capacity of the testator to dispose of it by will, living in another state or in a foreign country, could not be made a question, if qualified by the laws of such state or country, even if this section was omitted. With regard to wills of personal estate this section makes no new law. 1 Hugg. 498; Story's Con. of Laws, 363.

The same persons to whom lands descend on the death of the owner in Ohio are entitled to distribution of his personal estate. In other words, the law of descents and of distribution is the same. But if the owner of real and personal estate situate in Ohio has his domicile in a foreign country at the time of his death, the descent of his real estate and the distribution of his personal property may be to very different persons. His lands will descend according to the laws of Ohio. His personal property will be distributed according to the law of his domicile. Story's Con. of Laws, 402, 405–407; 3 Paige Ch. 331, 408; 5 Ves. jr. 785; 3 Ib. 207; 4 Wheat. 1; 4 Cond. R. 371; 21 No. Amer. Jurist, 101; 17 Ib. 75.

18]　*GRIMKE, J., delivered the opinion of the court:

The question to be decided resolves itself into another of still greater importance; and that is, whether the probate of a will affects the realty; for, if it does have this effect, it will be very difficult to escape the conclusion, that the sentence of the probate court, whether it be one of acceptance or rejection, is indispensable to give validity to the will, and that it is conclusive upon the matter which it professes to decide. In England, a will of personal property need not be attested by any witness, though it is now proposed, among other changes of judicial reform in that country, to make the attestation of two witnesses necessary to wills of real and personal property. The ecclesiastical court has exclusive jurisdiction of a will of personalty. It is proved *in the common form* by the executor, who deposes that it is the last will of the testator. If a mixed will, containing a disposition of both real and personal property, is there offered for probate, the proof is the same, and the probate only affects the personalty. So far as regards that, the probate, while unrepealed, is conclusive; the validity of the will can not even be tried by a jury; though it is now also proposed in that country to submit the will to be tried on the issue of *devastavit vel non,* in analogy to a will of land.

In Ohio the law is very different. The statute of 1824, which

was in force at the time this will was executed, rendered the attestation of two witnesses necessary to both species of will, and also required that both should be submitted to probate. It declares that the executor, etc., *may* cause the will to be brought before the court of common pleas; and "may" means "must," in all those cases where the public are interested, or where a matter of public policy, and not merely of private right, is involved. Our law, then, declares that where personal *or* real property is devised, the will must be offered for probate. It does not confine the proof to a will of personalty, as it would have done if it had not intended to depart from the English law, and to introduce a new rule into Ohio. In England the ecclesiastical courts have, from time immemorial, entertained jurisdiction only of personal bequests; and it is for that reason, that on the trial of an ejectment in that country, a will of land is treated as a deed, and must be proved in the same way. The only exception is, that where the original will is lost, the probate then becomes evidence.

When a will of real property is offered for probate, in Ohio, a sentence of some kind is pronounced upon it; the proof is declared *to be sufficient or insufficient; in the one case it is [19 accepted, in the other rejected. If it is rejected, it may still be re-propounded for probate; and if it is received, it may still, within a prescribed time, be impeached by the verdict of a jury, and a consequent decree in chancery. Can the sentence be questioned collaterally? If it can, it will afford the example of an open inconsistency with the general genius of our jurisprudence. No maxim is better settled than that the judgment, unreversed, of a court of competent jurisdiction, is conclusive. The rule is even stronger in relation to a court of probate than it is to a common law court. In the last, the judgment is binding upon parties and privies only; in the first, it is obligatory upon all the world; a distinction which has been recognized in a great variety of forms, in determinations made in our own country. 6 Ohio, 255; 11 S. & R. 428.

By our law, a particular tribunal is appointed to receive probate of a will. It does not signify that it is not *by name* a court of probate, that it is the court of common pleas, with a probate side to it. The same court has jurisdiction of both chancery and common law controversies; and yet, this mixture of powers would not avail as an argument to prove that its equity jurisdiction was

different in kind from that of the courts of chancery in England or South Carolina.

I am aware that the decisions in the other states, upon the precise matter which we are now considering, are by no means uniform, a fact which may be accounted for either from some peculiarity in their statutes, or which is more probable, from the difficulty which the mind has felt of renouncing English adjudications as to the different effect of the probate upon real and personal property, even after the introduction of a new law upon the subject. In Pennsylvania, the probate is *prima facie* evidence on the trial of an ejectment. 5 S. & R. 212; 10 S. & R. 84. In Massachusetts, it is conclusive. 16 Mass. 433. And I should judge, from comparing the two cases in 14 Johns. 407, and 12 Johns. 192, that the probate in New York was treated as only *prima facie* evidence; for, in the one case, parol evidence was resorted to, and would have been received if it had been sufficient; in the other, the probate constituted the only evidence.

If the sentence of the court, upon the validity of a will of land, were permitted to be re-examined and controverted on every trial, in which some one of the devises in it constituted a part of the title, it would produce great confusion and mischief. It would be difficult to say when a will should be considered as established. *The finding of a jury, in a collateral suit, that it was the will of the testator, after it had been rejected by the appropriate tribunal, would present a case of *irreconcilable* conflict between two opposite determinations, and if a verdict should also (as it necessarily must) have the power of annulling the will, after it has been established, it ought, also, to draw after it the further consequence of declaring the grant of administration illegal; and yet it could not have this effect without confounding every idea of stability in the administration of the law, and permitting one tribunal to usurp the acknowledged authority of another. The will would at one and the same time be a valid and an invalid will, and public confidence in the probate court would be greatly shaken, if not entirely destroyed. These are mischiefs for which no compensation could be found in the uncertainty and confusion in which all private rights would be involved.

The case of deeds is very different from that of wills. The law has not appointed any judicial tribunal to hear proof of the former, and to establish their validity. The reason is, because the

Baird et al. *v.* Kirtland et al.

former do not draw after them such a train of consequences as the last, the grant of administration, the rights of creditors, etc., all of which it is indispensable to settle immediately on the death of the testator, and which are so indissolubly connected with the fact of the validity of the will, that the sentence of some tribunal appears to be necessary, in the first instance, either to establish or to reject it.

There is a difference between the acts of 1808 and 1824. The former contains a clause which is omitted in the latter, and which declares that no written will should be valid till probate was had. But if every alteration in the law were to authorize new views and new rules, there never would be any certainty. It is very common in framing new statutes to omit clauses which were contained in antecedent ones, merely because they were unnecessary and superfluous; and that such was the intention in the act of 1824 is, I think, manifest. Therefore, until this will is established in the probate court, it can not be admitted in evidence.

---

\*Samuel Baird et al. *v.* Billions Kirtland and Jona- [21 than Fowler et al.

Where there is an absolute conveyance of land, intended as a mortgage, and a separate covenant by the grantee, to reconvey to the grantor on the payment of a sum of money, the equity remaining in the grantor can not be sold upon an execution at law.

In selling a mortgagor's interest in the mortgaged premises upon execution, the valuation must be of the entire estate. It is not competent for the valuers to make an estimate of the value and deduct the incumbrance.

This case was submitted to the court in Trumbull county on bill and demurrer.

The facts charged in the bill are substantially as follows: At the March term of the court of common pleas of Trumbull county, 1833, Samuel Baird and others, the complainants, recovered a judgment against Jonathan Fowler, one of the defendants. On this judgment a writ of *fi. fa.* was issued, bearing date July 1, 1833, which was levied on one and one-half acres of land in the township of Poland, in said county of Trumbull, which land is